**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

DARRELL E. A.,

                Claimant,

        v.

FRANK J. BISIGNANO,
Commissioner of Social Security,

                Respondent.

No. 24 C 4334

Magistrate Judge Karyn L. Bass Ehler

**MEMORANDUM OPINION AND ORDER**

Darrell E. A.[1] ("Claimant") appeals the decision of the Commissioner of Social Security[2] ("Commissioner"), denying his application for supplement security income. For the reasons set forth below, the Court the Court affirms the Commissioner's decision.[3]

**Background**

On August 23, 2021, Claimant applied for disability benefits, alleging a disability onset date of December 3, 2020. (R.15). His application was denied initially and on reconsideration after which Claimant requested a hearing before an Administrative Law Judge ("ALJ"). After conducting a hearing at which Claimant and a vocational expert testified, the ALJ denied Claimant's applications for benefits and concluded he was not disabled under the Social Security Act. (R.15-30). Claimant appealed to the Appeals Council, which denied review. (R.1-4).

---

[1] In accordance with Northern District of Illinois Local Rule 8.1, the Court refers to Claimant only by his first name and the first initial of his last name.

[2] Frank J. Bisignano was confirmed as the Commissioner of Social Security on May 6, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, he is automatically substituted as the named defendant in this case.

[3] The parties consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment, pursuant to 28 U.S.C. § 636(c). [ECF No. 8].

Accordingly, the ALJ's decision is the final decision of the Commissioner, which is reviewable by this Court pursuant to 42 U.S.C. § 405(g). *See Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009).

**Discussion**

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The regulations prescribe a five-part, sequential test for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Commissioner must consider whether: (1) the claimant has performed any substantial gainful activity during the period for which he claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the residual functional capacity ("RFC") to perform his past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. *Id.*; *see also Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001).

Applying the five-part test in this case, the ALJ found at step one that Claimant had not engaged in substantial gainful activity since August 23, 2021. (R.17). At step two, the ALJ found that Claimant has the severe impairment of "cervical spondylosis, stenosis, and radiculopathy; fracture of lumbar spine vertebrae; and right shoulder surgery in May 2023." (R.17). At step three, the ALJ found that Claimant does not have an impairment or combination of impairments that meets or equals a listed impairment. (R.21-22). At steps four and five, the ALJ determined:

2

the claimant had the residual functional capacity to perform light work as defined in 20 CFR 416.967(b), with the following limitations: no more than occasionally climb ladder, ropes, or scaffolds and crawl.

(R.22). The ALJ concluded Claimant was capable of performing past relevant work as a mail handler, and therefore found Claimant is not disabled. (R.29-30).

The Court reviews the ALJ's decision deferentially and must affirm the decision if it is supported by "[s]ubstantial evidence," *i.e.*, "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The Seventh Circuit has concluded that an ALJ's decision is "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024). Though the standard of review is deferential, the court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). Even if there is adequate evidence in the record to support an ALJ's decision, that decision cannot be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008); *see also Warnell*, 97 F.4th at 1053-54.

**Analysis**

Claimant first argues the ALJ erred in finding he could perform past relevant work that was not performed in the last five years, citing Social Security Ruling 24-2p ("SSR 24-2p"). *See* Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [ECF No. 14] ("Motion") at 6. Claimant argues SSR 24-2p bars consideration of the Mail Handler position relied on by the ALJ as past relevant work because Claimant last held that job in 2014, outside of the five-year look-back period preceding the ALJ's decision that is required by SSR 24-

3

2p. *Id.* Claimant says that would render him disabled under Rule 204.04 of the Medical-Vocational Guidelines because he would be a person of advanced age (over 55) limited to performing light work without past relevant work. *Id.*

Effective June 22, 2024, SSR 24-2p and the corresponding regulation define a claimant's past relevant work as work done within the past 5 years preceding the date of adjudication. *See* 20 C.F.R. § 404.1560(b)(1). Accordingly, with respect to past relevant work, SSR 24-2p specifies a 5-year lookback period rather than the 15-year lookback period applied by the ALJ. SSR 24-2p, however, was not in effect on the date of the ALJ's decision in this case (September 5, 2023). (*See* R.15-23).

In Reply, Claimant acknowledges the Social Security Administration ("SSA") has instructed courts to "review our final decisions using the rules that were in effect at the time we issued the decisions." SSR 24-2p n.1. *See* Plaintiff's Reply to Commissioner's Memorandum in Support of the Commissioner's Decision [ECF No. 23] ("Reply") at 1-3. Claimant says notwithstanding this clear directive from the Social Security Administration against retroactive application of SSR 24-2p, the Court should still apply a five-year lookback period to bar consideration of his Mail Handler position from 2014. Claimant argues that because the Social Security Administration has now provided good reasons for limiting past relevant work to only work done within the past five years, the agency's simultaneous directive to use the outdated fifteen-year timeframe for cases decided before this change "is not a best or correct interpretation of the Social Security Act" and its remedial purpose. Reply [ECF No. 23] at 2. In support, Claimant cites the Supreme Court opinion in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024) and argues "[a]gencies no longer have the same deference as previously accorded with statutory interpretation." Reply [ECF No. 23] at 2.

4

At least one other court in this district has considered and rejected this argument because "*Loper Bright* is inapplicable" in this context. *See Vicki A. v. Bisignano*, 2026 WL 323513, at *2–3 (N.D. Ill. Feb. 6, 2026) (citing *Loper Bright*, 603 U.S. at 413). *Loper Bright* "overruled the doctrine of Chevron deference" and held "that under the Administrative Procedure Act courts 'may not defer to an agency interpretation of the law simply because a statute is ambiguous.'" *See id.* But that is not the basis of Claimant's argument here. Unlike in *Loper Bright*, Claimant does not argue against deference to the Social Security Administration's interpretation of an ambiguous statute. Rather, Claimant makes a different argument, suggesting the agency's interpretation of its own regulations is unreasonable both as to the timeframe for consideration of past relevant work as well as the requirement that courts apply the regulations in effect at the time of the ALJ's decision. Accordingly, this is not an issue controlled or addressed by *Loper Bright*. *See Vicki A.*, 2026 WL 323513, at *2–3.

Claimant otherwise says the Court should retroactively apply SSR 24-2p on fairness grounds. The Court, however, cannot disregard the agency's clear directive against applying regulations that were not in effect at the time of the ALJ's decision. "Social Security Ruling 24-2p is clear that when evaluating past relevant work under the regulations, courts are to apply the rules in effect at the time the ALJ's decision was issued." *Vicki A.*, 2026 WL 323513, at *2–3 (citing *Velasquez-Garcia v. Holder*, 760 F.3d 571, 579 (7th Cir. 2014) for proposition that retroactivity is not generally favored in the law and concluding the Court lacks authority to substitute its judgment and apply the new regulations retroactively); *see, e.g., Nona A. v. Bisignano*, 2026 WL 1229648, at *3 (N.D. Ill. May 5, 2026) ("Plaintiff's contention that SSR 24-2p provides a basis for reversal is easily disposed of, as SSR 24-2p became effective on June 22, 2024 and was not in place at the time of the ALJ's decision (November 2023)."); *Shilts v. Comm'r*

5

*of Soc. Sec.*, 2025 WL 2013577, at \*3–4 (N.D. Ind. July 17, 2025) (same); *Rita S. v. Dudek*, 2025

WL 1141179, at \*2–3 (N.D. Ill. Apr. 16, 2025) (same). Thus, the Court declines to retroactively

apply SSR 24-2p. For all the above reasons, the Court finds the ALJ did not err in considering

Claimant's past employment as a Mail Handler within the 15-year period preceding the ALJ's

decision as past relevant work.

Next Claimant argues that the ALJ erred in evaluating and discounting the opinion of

Claimant's treating physician, Dr. Mustafa. Motion [ECF No. 14] at 6-12. The regulations require

an ALJ to consider a number of factors when evaluating medical opinions, the most important of

which are supportability and consistency. *See* 20 C.F.R. § 404.1520c(b)(2), (3). The regulations

additionally require ALJs to explain how they evaluated the medical opinions and whether or not

the opinions are persuasive and why. *See* 20 C.F.R. § 404.1520c(a) and (b)(1). The ALJ need only

"minimally articulate [her] reasons for crediting or rejecting" each opinion. *Clifford v. Apfel*, 227

F.3d 836, 870 (7th Cir. 2000).

Here, the ALJ found that Dr. Mustafa's opinion was not persuasive and provided the

following explanation:

> The claimant's primary care provider, Nazima Mustafa, M.D., completed a Physical Residual Functional Capacity Questionnaire in March 2022, where she assessed multiple significant limitations, including that the claimant's pain or other symptoms would interfere with the attention and concentration needed to perform even simple work tasks frequently, that he can sit for less than 2 hours total and stand/walk for less than 2 hours total in an 8-hour workday, that he needs a job that permits shifting positions at will, that he would need unscheduled breaks 5 times per day for about 15 to 20 minutes, that the claimant's legs should be elevated waist high, that the claimant can rarely lift 20 pounds and occasionally lift 10 pounds, that the claimant can reach 0% of the workday on the right and 50% of the workday on the left, that he can use his fingers for fine manipulations 80% of the workday, and that he would be absent more than four days per month due to impairments or treatment (Ex B5F). Dr. Mustafa indicated that the claimant's diagnosis was cervical radiculopathy and that the frequency of treatment was every 3 to 4 months. After review, the undersigned does not find Dr. Mustafa's opinion to be persuasive overall. She did not refer to the record, such as specific treatment notes, to support

the limitations assessed, including that with attention/concentration, a need for breaks to walk around, the need to change positions at will, the need for unscheduled breaks, the need to elevate his lower extremities waist high, the limitations in reaching and using his fingers, or absences. Further, she did not explain what is a good versus bad day and the actual impact on the claimant's ability to function. Moreover, there are no such limitations are (*sic*) seen in the record including at Ex B1F; Ex B2F; Ex B4F; Ex B6F; Ex B7F; Ex B8F; Ex B9F; Ex B10F; and Ex B11F. It is noted that Dr. Mustafa's physical examinations of the claimant are generally normal (see, for example, Ex B3F, 12; Ex B6F, 7; Ex B7F, 7; Ex B11F, 5; Ex B13F, 75), including on the date that she filled out there (*sic*) form where she found that the claimant had normal cervical range of motion, no lower leg edema, and no focal deficits present (Ex B6F, 14). Dr. Mustafa also indicated that the claimant experiences sedation from medication (Ex B5F, 1), but such problems with medication side effects, including sedation, are not shown in the record on an ongoing basis to support greater limitations. Yet, Dr. Mustafa indicated that the claimant has no problems using his hands (he can use them 100% of the workday) and this is consistent with the medical record as well as the claimant's testimony.

(R.28-29).

As set forth above, the ALJ stated she was not persuaded by the significant limitations described in Dr. Mustafa's opinion because such extensive limitations were not supported by or consistent with the record evidence. (R.28-29). The ALJ observed Dr. Mustafa did not reference the record or specific treatment notes to support the limitations assessed in her opinion, including for attention/concentration, breaks to walk around, changing positions, unscheduled breaks, elevating legs above the waist, in reaching and using fingers, or absences. (R.29). The ALJ concluded "there are no such limitations are (*sic*) seen in the record" and provided record citations in support. *Id.*

Claimant says Dr. Mustafa's treatment notes reflect objective records, including MRI findings, that show Claimant had cervical radiculopathy and stenosis, and degenerative cervical changes and bulging discs, and that these treatment notes "regularly noted he was positive for arthralgias, myalgia, neck pain, numbness, weakness, and gait impairment." Motion [ECF No. 14] at 8-9. Claimant also says that other treatment providers similarly noted Claimant experienced

"tenderness over his cervical and lumbar paraspinal muscles as well as facet pain," "decreased range of motion with pain in his neck and right shoulder," and that physical therapy records noted he had some range of motion deficits, pain, and cervical muscle weakness. *Id.* at 9.

Claimant's argument is not directly responsive to the ALJ's reasoning. The ALJ acknowledged objective findings of these conditions in the medical record but also found the record did not support the specific, extensive limitations Dr. Mustafa described. While Claimant argues "the record contained an extensive number of medical findings detailing [Claimant's] impairments which the ALJ did not discuss when evaluating Dr. Mustafa's medical opinion," Claimant also acknowledges the ALJ considered record evidence that was favorable to Claimant's argument elsewhere in her opinion when summarizing Claimant's medical history. *See* Motion [ECF No. 14] at 8-9. (R.23-27 (discussing medical history and records related to Claimant's conditions from 2020 through 2023 including abnormal MRI findings, diagnosis of cervical radiculopathy and Claimant's reports of pain, as well as records showing successful treatments and pain relief at points from branch blocks, radiofrequency ablation, and improvement with physical therapy following right shoulder surgery in May 2023)). An ALJ's decision must be read holistically. *See Zellweger v. Saul*, 984 F.3d 1251, 1255 (7th Cir. 2021). The Court concludes that reading the ALJ's opinion in full context, the ALJ considered the record evidence identified by Claimant and addressed both favorable and unfavorable evidence, and, later in her opinion, concluded the record (which the ALJ had already discussed in detail earlier in the opinion) did not support the significant limitations endorsed in Dr. Mustafa's opinion.

Claimant also says Dr. Mustafa explained "certain limitations she opined to," pointing to Dr. Mustafa's reference to abnormal MRI studies as supporting her assessment of Claimant's neck, back, and right leg pain, and right hand weakness. *Id.* at 10. Again, while Dr. Mustafa relied on

abnormal MRI studies to support Claimant's neck, back, and right leg pain, the reference to these MRI's does not provide record support for the limitations imposed by Dr. Mustafa to accommodate that pain, which was what the ALJ found lacking in Dr. Mustafa's opinion.[4]

Claimant says Dr. Mustafa supported certain limitations by noting Claimant's pain was exacerbated by sitting, standing, or walking, and repetitive work, that his leg cramps warrant the need for elevation, and that he needs breaks because of muscular aches, chronic fatigue, and adverse effects of medication.[5] Motion [ECF No. 14] at 10. Claimant's argument, however, does not address the ALJ's concern that Dr. Mustafa did not identify record support for the substantial limitations she imposed for breaks, walking, changing positions at will, and elevating lower extremities. (R.29). The ALJ acknowledged Dr. Mustafa "assessed multiple significant limitations" including that Claimant "can sit for less than 2 hours total and stand/walk for less than 2 hours in an 8-hour workday, that he needs a job that permits shifting positions at will, that he would need unscheduled breaks 5 times per day for about 15-20 minutes" and "that the claimant's legs should be elevated waist high" but explained she did not find opinion persuasive because Dr. Mustafa did not refer to specific treatment notes or other record evidence to support the significant limitations imposed in the opinion (R.28-29). The Court will not second-guess the ALJ's

---

[4] Moreover, although Dr. Mustafa also stated the MRI studies supported Claimant's right-hand weakness, the ALJ noted "Dr. Mustafa indicated the claimant has no problems using his hands (he can use them 100% of the workday) and this is consistent with the medical record as well as the claimant's testimony." (R.29). Claimant does not address this aspect of the ALJ's criticism of Dr. Mustafa's opinion.

[5] With respect to the effects of medication supporting Claimant's need for breaks, the ALJ specifically noted that the record did not support Dr. Mustafa's reference to Claimant experiencing side effects from medication. (R.29). Claimant appears to acknowledge the ALJ's criticism in this regard was justified, or at least does not identify any evidence supporting Dr. Mustafa's reference to such side effects. Motion [ECF No. 14] at 11. Instead, Claimant suggests the ALJ could have still adopted the other limitations in Dr. Mustafa's opinion. As discussed above, however, the ALJ's reasons for not adopting those other limitations are reasonable and supported in her opinion.

conclusion that the substantial limitations described in Dr. Mustafa's opinion was not supported by record evidence.

Moreover, the ALJ found persuasive the state agency consultant opinions (initial by Dr. Bilinsky and on reconsideration by Dr. Kelly) limiting Claimant to light work and finding Claimant could stand and/or walk (with normal breaks) for a total of about 6 hours in an 8 hour workday and sit (with normal breaks) for a total of about 6 hours in an 8 hour workday. (R.28; *see also* R.75-87). Notably, Claimant does not challenge the ALJ's reliance on the consultant's opinions in the Motion.

On Reply, Claimant acknowledges the Commissioner's argument that Dr. Kelly, on the reconsideration level of review, rejected Dr. Mustafa's opinion as unsupported by the doctor's own examinations and because it relied too heavily on Claimant's subjective symptoms. Reply [ECF No. 23] at 6; Response [ECF No. 20] at 10. Claimant argues, however, that because the ALJ did not expressly rely on Dr. Kelly's criticisms of Dr. Mustafa's opinion, it is an improper post-hoc rationalization for the Commissioner to attempt to support the ALJ's rejection of Dr. Mustafa's opinion on that basis. This misses the point. The ALJ stated she was persuaded by the consultants' assessment that Claimant was limited to light work and the ALJ also stated she was not persuaded by Dr. Mustafa's opinion finding Claimant was much more significantly limited. (R.28-29). That the ALJ's reasons for rejecting Dr. Mustafa's opinion were similar to those expressed by Dr. Kelly but the ALJ did not expressly adopt Dr. Kelly's criticisms as a basis for the ALJ's opinion does not mean that the ALJ's opinion is not supported by substantial evidence. To the contrary, the ALJ provided her own reasoning and analysis to explain why she rejected Dr. Mustafa's opinion. The ALJ also expressly relied on the state consultants' opinions and the light work limitations in their mirror those adopted by the ALJ in the RFC. (R.22). The ALJ's assessment of Dr. Mustafa's

10

opinion cannot be read in a vacuum, as Claimant suggests, and must be considered in light of the other opinion and record evidence the ALJ found more persuasive, which included the consultants' opinions finding Claimant was capable of performing light work without significant limitations like those recommended by Dr. Mustafa.[6]

Claimant also does not address the ALJ's citation to evidence supporting her conclusion that significant limitations like those assessed in Dr. Mustafa's opinion are not seen in the record. (R.29 (citing Ex. B1F; Ex. B2F; Ex. B4F; Ex. B6F; Ex. B7F; Ex. B8F; Ex. B9F; Ex. B10F; and Ex. B11F).) Nor does Claimant address other reasons provided by the ALJ for rejecting Dr. Mustafa's opinion, including that Dr. Mustafa's physical examinations of Claimant were, in contrast to her opinion, generally normal and that on the same day Dr. Mustafa completed the opinion checklist form, Dr. Mustafa's treatment notes reflect she found Claimant "had normal cervical range of motion, no lower leg edema, and no focal deficits present." (R.29 (citing examples from Dr. Mustafa's treatment records including Ex. BF3 at 12 (reporting "normal range of motion" on examination for "cervical back" and other normal exam findings); Ex. BF6 at 7 and 14 (same); Ex. B7F at 7 (same); Ex. B11F at 5 (same); Ex. B13F at 75 (same)).

In sum, Claimant does not squarely address the ALJ's reasons for not finding Dr. Mustafa's opinion persuasive. Instead, Claimant essentially asks the Court to weigh Dr. Mustafa's opinion differently than the ALJ did. However, that is something the Court cannot do. *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) ("We will not reweigh the evidence, resolve debatable

---

[6] In Reply, Claimant says the ALJ did not find the state consultants' opinions fully persuasive. Reply [ECF No. 23] at 3. While the ALJ did not find the consultants' opinions "fully persuasive as to physical/exertional aspects," the ALJ also expressly stated she agreed with the consultants' opinions limiting Claimant to light work, to not lifting more than 20 pounds, to the stated limitations in walking, standing and sitting (described above), and as to climbing and crawling. (R.28 (further explaining the ALJ disagreed with the reconsideration opinion's assessment of additional balancing limitations due to vertigo or dizziness, which the ALJ found the record did not support as an ongoing problem)). Moreover, as noted above, Claimant did not challenge the ALJ's reliance on the consultants' opinions.

evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination so long as substantial evidence supports it."). The relevant question for this Court is not whether the ALJ's assessment is correct but whether it is reasonable. *See Sanders v. Colvin*, 600 F. App'x 469, 470 (7th Cir. 2015) ("An ALJ's job is to weigh conflicting evidence, and the loser in such a process is bound to believe that the finder of fact should have been more favorable to his cause."). The ALJ provided sufficient reasons to support her decision to reject Dr. Mustafa's opinion and to instead rely on the state consultants' opinions that Claimant could perform light work. The Court cannot, and will not, disturb the ALJ's assessment.

Finally, Claimant argues the ALJ erred in evaluating Claimant's subjective symptoms. Motion [ECF No. 14] at 12-15. The Court disagrees. When evaluating a claimant's subjective symptom allegations, an ALJ considers several factors, including the objective medical evidence, the claimant's daily activities, his level of pain or symptoms, aggravating factors, medication, course of treatment, and functional limitations. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304, at *5-8. "As long as an ALJ gives specific reasons supported by the record, [the Court] will not overturn a credibility determination unless it is patently wrong." *Grotts v. Kijakazi*, 27 F.4th 1273, 1279 (7th Cir. 2022). "Patently wrong" means that the decision lacks any explanation or support. *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017). Not all the ALJ's reasons must be valid in a subjective symptom analysis, "as long as *enough* of them are." *Halsell v. Astrue*, 357 F. App'x 717, 722 (7th Cir. 2009) (emphasis in original).

The ALJ considered a number of these factors in assessing whether Claimant's statements about the intensity, persistence, and limiting effects of his symptoms are consistent with the evidence. The ALJ considered records showing Claimant's neck pain symptoms improved with treatment such as injections and radiofrequency ablation, and that his right shoulder pain was

12

improving post-surgery with physical therapy, although Claimant still had some pain at night. (R.27). The ALJ also noted "[d]espite the claimant's allegations of significant limitations, physical examinations of the claimant reveal that he exhibits a normal gait and does not require an assistive device" and that he retains intact strength to his extremities on examination. *Id.* The ALJ also found the record did not support that Claimant's impairments would result in excessive absences or off-task time, and described a series of daily activities that Claimant is able to perform. *Id.*

In challenging the ALJ's consideration of Claimant's subjective symptoms, Claimant first argues the ALJ did not show how [Claimant's] daily activities indicated that he could work a full-time job." Motion [ECF No. 14] at 13. In the Court's view, the ALJ did not rely on Claimant's ability to engage in daily activities to conclude he was able to work full-time, which would have been improper. *See Reinaas v. Saul*, 953 F.3d 461, 467 (7th Cir. 2020) (cautioning "there are critical differences between keeping up with activities of daily living and holding down a full-time job"). Rather, the ALJ found the record did not show that Claimant's impairments and/or treatment would result in excessive absences and/or off-task time, such as due to a deficit in his ability to concentrate, persist, or maintain pace, and "noted that the claimant reported that he is generally able to perform his daily activities" as one part of the ALJ's explanation for why "the evidence generally does not support the alleged loss of functioning." (R.27). It was in that context that the ALJ considered Claimant's activities. *See Jeske v. Saul*, 955 F.3d 583, 593 (7th Cir. 2020) ("the ALJ considered Jeske's daily-living activities as one factor—among others—indicating that Jeske's descriptions of her mental-functioning limitations were not fully credible. This use of daily-living activities, to assess credibility and symptoms, was not improper.").

Claimant also says certain activities identified by the ALJ do not support his ability to work full-time. Motion [ECF No. 14] at 13 (noting ALJ's reference to Claimant's ability to live with his

13

retired mother without requiring a personal care assistant or placement in a nursing facility). Again, in the Court's view, the appropriate question is whether ALJ improperly conflated Claimant's activities with the ability to perform full-time work and the Court finds the ALJ did not do so here. Instead, the ALJ considered Claimant's ability to engage in certain activities to be generally inconsistent with Claimant's claims of significant limitations and particularly so with respect to excessive absences or off-task time or deficits in his ability to concentrate and persist. (R.27 (considering Claimant's ability to live at home, tend to personal care, prepare something to eat, leave his residence alone, go out daily, shop, do laundry, perform household chores like cleaning a small area of floor, make his bed, dust, take out garbage if not too heavy, manage finances, get around using a medical car paid by insurance, attend church, read mysteries, and use a cell phone including using hands and arms to text and use email and social media)). The ALJ did not equate Claimant's ability to engage in these activities with the ability to perform full-time work. Instead, the ALJ "used [Claimant's] reported activities to assess the credibility of h[is] statements concerning the intensity, persistence, or limiting effects of h[is] symptoms consistent with the applicable rules." *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019).

Claimant then argues the ALJ did not consider limitations in Claimant's ability to engage in certain activities, such as doing laundry and shopping only once a month, utilizing car transportation provided by his insurance company rather than driving himself, and traveling on a plane once to attend a funeral. Motion [ECF No. 14] at 13. The Court disagrees. While the ALJ did not specifically mention that Claimant does laundry and shopping only once a month, the ALJ did not overstate the frequency with which Claimant engages in those tasks. (R.27 (noting Clamant "is able to shop" and "to do laundry")). Moreover, the ALJ acknowledged other limits on Claimant's ability to perform activities, such as that Claimant can "clean the floor of a small area,"

14

can "take out garbage that is not too heavy," is "able to do chores like fix door knobs" but noting "he injured his right shoulder in December 2022, and that "he eats out, but seldomly." *Id.* In addition, the ALJ noted that "he can get around using a medical car via insurance" while also expressly acknowledging Claimant did not have a driver's license. *Id.* Overall, the Court finds the ALJ did not ignore certain limitations Claimant encounters in his daily living activities.

In Reply, Claimant acknowledges the ALJ was entitled to consider his activities in this manner but says the ALJ still failed to explain how "each activity of daily living . . . contradicted [Claimant's] specific subjective limitations." Reply [ECF No. 23] at 8. The Court disagrees that the ALJ was required to engage in this detailed analysis when considering Claimant's activities. *See Shideler v. Astrue*, 688 F.3d 306, 312 (7th Cir. 2012) ("[A]n ALJ's credibility findings need not specify which statements were not credible."). Moreover, Claimant does not address all of the ALJ's reasons for discounting Claimant's subjective symptoms, including that "[d]espite the claimant's allegations of significant limitations, physical examinations . . . reveal that he exhibits a normal gait and does not require an assistive device" and that Claimant "retains intact strength in his extremities as shown on exam." (R.27 (internal citations omitted)). Not all of the ALJ's reasons must be valid in a subjective symptom analysis, "as long as enough of them are." *Halsell*, 357 F. App'x at 722 (affirming symptom assessment despite flawed activities analysis); *see also Schrank v. Saul*, 843 Fed. App'x 786, 789 (7th Cir. 2021) (unpublished) ("[W]e would not reverse the credibility determination as long as the ALJ provided at least one reason to support the finding."). The Court acknowledges the ALJ could have provided more explanation as to how she considered Claimant's daily activities as compared to Claimant's alleged symptoms but given that an ALJ's credibility assessment "need not be perfect; it just cannot be patently wrong" the Court

concludes the ALJ's discussion of Claimant's activities "clear[s] that low bar." *Sandy v. Bisignano*, 2026 WL 508149, at *3 (N.D. Ill. Feb. 24, 2026) (internal citations omitted).

Finally, Claimant challenges the ALJ's consideration of improvements in Claimant's symptoms, arguing because those improvements did not equate to an ability to perform full-time work, the ALJ should not have relied on them to contradict Claimant's allegations. Motion [ECF No. 14] at 15-16. Consideration of a claimant's treatments to relieve pain and other symptoms is, however, a factor that is specifically contemplated by the regulations. *See* 20 C.F.R. § 404.1529(c); *Pufahl v. Bisignano*, 142 F.4th 446, 459 (7th Cir. 2025) ("the ALJ was permitted to consider the treatment of [Claimant's] conditions and the effectiveness of that treatment in support of his credibility analysis."). Claimant further argues the fact that Claimant received invasive procedures like injections and ablation suggests that Claimant's subjective allegations should be believed. The ALJ did not, however, find that Claimant's treatments resolved all of his symptoms; instead the ALJ acknowledged that Claimant received treatments in response to the pain in his neck, but also noted that Claimant reported improvement of his neck pain with injections and radiofrequency ablation, and of his right shoulder pain post-surgery and physical therapy, while also observing Claimant continued to report some discomfort at nighttime. (R.27).

The ALJ permissibly relied on treatment records showing improved or lessened symptoms, medical examinations with normal findings and absent reports of substantial functional limitations, as well as Claimant's ability to engage in daily activities, and, elsewhere in the opinion, the opinions of the state agency consultants, in finding Claimant's alleged symptoms were not as disabling as he claimed. *See Pufahl*, 142 F.4th at 459. With citations to the record, the ALJ discussed and analyzed Claimant's alleged symptoms and reasonably determined that the significant limiting effects of his symptoms was not fully corroborated by the record. *See Ray v.*

16

*Saul*, 861 F. App'x 102, 107 (7th Cir. 2021) ("Because the ALJ's weighing of [claimant's] reported symptoms in the context of the whole record is supported by substantial evidence, we find no reversible error on this front either."); *Schrank v. Saul*, 843 F. App'x 786, 789 (7th Cir. 2021) ("[T]he ALJ's credibility determination was not 'patently wrong,' because she found [claimant] not credible for several reasons that were adequately supported by the record.") (citation omitted); *Lacher v. Saul*, 830 F. App'x 476, 478 (7th Cir. 2020) ("The ALJ's rationale here was thin, but it was adequate to reflect her conclusion that the objective medical evidence and [the claimant's] daily activities did not corroborate his subjective symptoms.").

Claimant's burden on review of the ALJ's decision is a heavy one, and he has to show the ALJ's assessment of his symptoms was "patently wrong" which means that the decision "lacks any explanation or support." *Hess v. O'Malley*, 92 F.4th 671, 679 (7th Cir. 2024); *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014). In the Court's view, Claimant falls short of that mark. Although Claimant disagrees with the ALJ's assessment and wants the evidence to be weighed differently, he has not shown the ALJ's evaluation of his symptoms was not supported by the evidence. *See Horr v. Berryhill*, 743 F. App'x 16, 19-20 (7th Cir. 2018). The Court does not find any reversible error in the ALJ's assessment or how he evaluated Claimant's symptoms and his daily activities.

**CONCLUSION**

Accordingly, for all the reasons set forth above, Claimant's request for remand in Claimant's Brief in Support of Reversing the Decision of the Commissioner of Social Security [ECF No. 14] is denied and Defendant's request for summary judgment in Defendant's Response to Plaintiff's Motion for Summary Judgment [ECF No. 20] is granted.

17

It is so ordered.

Karyn L. Bass Ehler
United States Magistrate Judge

Dated: June 24, 2026

18